2017 IL App (1st) 162987

SIXTH DIVISION
Opinion filed: September 1, 2017

No. 1-16-2987

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JOHN OVNIK, KIMBERLEE OVNIK, and CHICAGO MUSIC WORKS, INC. d/b/a Deaf Dog Music, | ) ) ) | Appeal from the Circuit Court of Cook County |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 13 L 12989 |
| | ) | |
| GALINA PODOLSKEY and VADIM GOSHKO, | ) ) | Honorable Patrick J. Sherlock, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Justice Rochford concurred in the judgment and opinion.
Justice Delort specially concurred, with opinion.

**OPINION**

¶ 1    The defendants, Galina Podolskey (Galina) and Vadim Goshko (Vadim), appeal from various orders entered by the circuit court in the instant action brought by the plaintiffs, John Ovnik (John), Kimberlee Ovnik (Kimberlee) (collectively, the Ovniks), and Chicago Music Works, Inc. d/b/a Deaf Dog Music (CMW), seeking damages by reason of the defendants' failure to return the security deposit posted with them in connection with the rental of a townhouse plus penalties, interest, attorney fees, and costs under the Chicago Residential

Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010 *et seq.* (amended Mar. 31, 2004)).  On appeal, the defendants contend, *inter alia,* that the circuit court erred by: denying, in whole or in part, three motions to dismiss that they brought pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)); and granting summary judgment in Kimberlee's favor.  For the reasons that follow, we reverse the summary judgment entered by the circuit court and remand the matter for further proceedings consistent with this opinion.

¶ 2      The following factual recitation is derived from the pleadings and exhibits of record.

¶ 3      In May 2009, the defendants, as the lessors, entered into a two-year lease agreement to lease a townhouse located at 1816 South Indiana Avenue in Chicago.  The lease agreement stated that it was "for a private dwelling" and included a copy of the RLTO.  The named lessee was CMW and John, CMW's sole shareholder, was a guarantor.  Although Kimberlee paid the $6,375 security deposit with a personal check (the 2009 security deposit), the lease agreement stated that "[l]essee has deposited with [l]essor the security deposit" and that, upon termination of the lease agreement, the security deposit "shall be returned to [l]essee, including interest[ ] ***."  In October 2010, CMW fell behind on its rent payments due under the lease.  On November 12, 2010, John sent a text message to Galina, stating that she could deduct October's rent from the 2009 security deposit and that he was "not concerned with earning interest on the deposit."

¶ 4      The lease agreement was renewed for another two-year term beginning in June 2011. The renewal lease agreement listed both CMW and John as tenants and required an additional security deposit of $6,757.50, which CMW paid (the 2011 supplemental security deposit), for a total security deposit of $13,132.50 (the combined security deposit).  In May 2013, at the end of

the two-year renewal lease term, the townhouse was vacated, but the defendants refused to return the combined security deposit.

¶ 5    On November 14, 2013, the Ovniks filed the instant action seeking to recover the combined security deposit plus penalties, interest, attorney fees, and costs under sections 5-12-080(f)(1) and 5-12-180 of the RLTO (Chicago Municipal Code §§ 5-12-080(f)(1) (amended July 28, 2010), 5-12-180 (amended Nov. 6, 1991)).

¶ 6    On August 11, 2014, the defendants filed a motion pursuant to section 2-619 of the Code to dismiss that portion of the plaintiffs' complaint seeking interest, penalties, attorney fees, and costs, alleging that John waived the plaintiffs' right to "any interest" on the combined security deposit.  In her affidavit filed in support of the defendants' motion, Galina attested that she did not pay interest on the security deposit due to the text message she received from John on November 12, 2010.  The Ovniks filed a response and attached an affidavit from John, who claimed that Galina offered to return the combined security deposit with interest if he and Kimberlee signed a release agreement when they vacated the townhouse.  The circuit court denied the defendants' motion to dismiss, finding that the plaintiffs could not, as a matter of law, waive their right to interest and were, therefore, not estopped from raising a claim for interest.

¶ 7    A three-count second amended complaint was subsequently filed by John, Kimberlee, and CMW, alleging that the defendants:  (1) failed to return the combined security deposit (count I); failed to pay interest on the security deposit from June 1, 2011, to May 31, 2012 (count II); and failed to pay interest on the security deposit from June 1, 2012, to May 29, 2013 (count III). The same attorney represented both CMW and the Ovniks.

¶ 8    On April 20, 2015, the defendants filed a motion to dismiss the second amended complaint pursuant to section 2-619 of the Code, arguing that the RLTO does not apply to

- 3 -

corporate entities such as CMW, and the plaintiffs, therefore, lacked standing to bring a claim under the RLTO. They asserted that the Ovniks were not parties to the lease agreements and that it was CMW that paid both security deposits. The defendants supported their motion with copies of CMW's rent checks.

¶ 9 On June 3, 2015, the circuit court granted the defendants' motion in part. Although the circuit court held that the RLTO applied to all three plaintiffs, it, nevertheless, dismissed the Ovniks as party-plaintiffs for lack of standing based upon its finding that they had not paid any security deposit. The circuit court denied the motion as to CMW.

¶ 10 On June 10, 2015, the defendants filed their answer to the second amended complaint along with their affirmative defenses and a four-count counterclaim. In their affirmative defenses, the defendants again asserted that the RLTO did not apply to corporate lessees and that John had waived interest on the security deposit in his November 12, 2010, text message.

¶ 11 On July 2, 2015, the Ovniks filed a motion to reconsider the circuit court's order dismissing them as plaintiffs. They argued that, contrary to the court's factual determination, Kimberlee had paid the 2009 security deposit. In support of their motion was Kimberlee's affidavit and a copy of a check from her bank account in the amount of $6,375, payable to Vadim.

¶ 12 On July 16, 2015, before the circuit court ruled on the Ovniks' motion to reconsider, the matter proceeded to mandatory arbitration on CMW's claims against the defendants. In its Statement of the Case filed in the arbitration proceeding, CMW stated that it sought "the amount of the security deposit ($13,132[.]50)," plus penalties, interest, and attorneys fees, and it listed Kimberlee and John as witnesses. On July 20, 2015, following the arbitration hearing, the

arbitrator awarded CMW a total of $21,187.86, but did not state how the award was calculated. None of the parties moved to reject the arbitrator's award.

¶ 13    On September 28, 2015, the circuit court granted in part the Ovniks' motion to reconsider its June 3, 2015, order dismissing them as party-plaintiffs. Specifically, the circuit court vacated its order as to Kimberlee, but did not vacate its order as to John.

¶ 14    On September 29, 2015, the circuit court entered:  a $21,187.86 judgment in favor of CMW on the arbitrator's award against Galina and Vadim, jointly and severally; and a judgment in favor of the Ovniks and CMW on the defendants' counterclaims. The order states that, as to CMW and John, it "is a final order and there is no reason for delaying enforcement, appeal or both."

¶ 15    On October 13, 2015, the defendants filed a section 2-619 motion to dismiss, arguing, *inter alia,* that Kimberlee's claim based upon their failure to return the 2009 security deposit or pay interest thereon was barred by the doctrines of *res judicata* and collateral estoppel. The circuit court denied the defendants' motion, finding that "[t]he amount of [the arbitrator's] award shows he did not *** enter" an award as to the 2009 security deposit.

¶ 16    On April 28, 2016, Kimberlee moved for summary judgment on her individual claims. She asserted that "judgment has already been entered in favor of CMW and against [the defendants] with respect to one of the two security deposits," and that the only remaining issue was the defendants' failure to return the security deposit which she posted in 2009, along with interest thereon from 2012 and 2013.

¶ 17    On June 15, 2016, the defendants filed their response in opposition to Kimberlee's motion for summary judgment, asserting that she was in privity with CMW, and as a

consequence of the judgment in favor of CMW on the arbitration award, her claims based upon the 2009 security deposit are barred under the doctrine of *res judicata*.

¶ 18    On July 6, 2016, the circuit court granted summary judgment in favor of Kimberlee and against the defendants in the sum of $19,125 for the 2009 security deposit and penalties under the RLTO.  On October 5, 2016, the circuit court granted Kimberlee an additional $25,200 for attorney fees, costs, and interest.  The circuit court denied the defendants' post-judgment motions on November 3, 2016, and this appeal followed.

¶ 19    The defendants argue initially that the circuit court erred by denying, in whole or in part, the section 2-619 motions to dismiss which they filed on August 11, 2014, April 20, 2015, and October 13, 2015.  However, we need not address the merits of the defendants' arguments as the denial of a section 2-619 motion to dismiss is not generally reviewable on appeal as any error in the denial of the motion merges into the final judgment, which in this case was the summary judgment entered in favor of Kimberlee, and it is from that final judgment that an appeal is taken. *In re Marriage of Sorokin*, 2017 IL App (2d) 160885, ¶ 22; *In re J.M.*, 245 Ill. App. 3d 909, 919-20 (1993); *Paulson v. Suson*, 97 Ill. App. 3d 326, 328 (1981).

¶ 20    Section 2-619 of the Code affords a defendant a means of obtaining a summary disposition of an action based upon issues of law or uncontroverted facts establishing certain enumerated defenses.  In this regard, a section 2-619 motion is analogous to a motion for summary judgment. *In re J.M.*, 245 Ill. App. 3d at 919-20; *Paulson*, 97 Ill. App. 3d at 328.  The supreme court has held that any error in the denial of a motion for summary judgment ordinarily merges into the final judgment (*In re Estate of Funk,* 221 Ill. 2d 30, 85 (2006); *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 355 (2002)), and the same is true of any

error in the denial of a section 2-619 motion. *In re Marriage of Sorokin*, 2017 IL App (2d) 160885, ¶ 22; *In re J.M.*, 245 Ill. App. 3d at 919-20; *Paulson*, 97 Ill. App. 3d at 328.

¶ 21    We are not unmindful that, in *CitiMortgage, Inc. v. Hoeft*, 2015 IL App (1st) 150459, a panel of this court considered an appeal from the denial of a section 2-619 motion to dismiss in the context of an appeal filed following a final judgment in a mortgage foreclosure action. After recognizing that the denial of a motion to dismiss is not a final and appealable order, the court in *CitiMortgage*, nevertheless, concluded that it had jurisdiction to review the trial court's order denying the defendant's section 2-619 motion, reasoning that the order was a procedural step toward the final judgment confirming the sale after foreclosure. *Id.*, ¶ 8.   However, we decline to follow the *CitiMortgage* court's determination that an order denying a section 2-619 motion to dismiss is appealable following the entry of a final order terminating the litigation in which it was entered for three reasons. First, contrary to the court's analysis, the issue in *CitiMortgage* was not one of jurisdiction; rather, it was one of merger. The defendants in *CitiMortgage* did not attempt to appeal immediately from the interlocutory order denying their section 2-619 motion as did the defendant in *Cabinet Service Tile, Inc. v. Schroeder*, 255 Ill. App. 3d 865 (1993), a case relied upon by the court in *CitiMortgage*. The court in *Cabinet Service Tile* found that it lacked jurisdiction to entertain the appeal because it was brought directly from the denial of a section 2-619 motion; a non-final, interlocutory order. *Id.* at 869.   When, as in this case, a defendant attempts to appeal from an order denying a section 2-619 motion in the context of an appeal from a final order disposing of the litigation, this court will not review the order denying the section 2-619 motion, not because we lack jurisdiction to hear the appeal, but because the order merges into the final judgment from which the appeal was taken. See *In re Marriage of Sorokin*, 2017 IL App (2d) 160885, ¶ 22; *In re J.M.*, 245 Ill. App. 3d at 919-20; *Paulson*, 97 Ill. App. 3d at 328.

Second, the court in *CitiMortgage* relied upon the holding in *Knapp v. Bulun*, 392 Ill. App. 3d 1018 (2009), in support of the proposition that an appeal from a final judgment draws into issue all previous interlocutory orders that produced the final judgment. *Knapp*, however, did not involve an appeal from the denial of a motion to dismiss but, rather, from an order vacating an order which granted the plaintiff leave to file an amended complaint. *Id.* at 1023. The vacating of the order which granted the plaintiffs in *Knapp* leave to file an amended complaint was a procedural step in the progression leading to the order terminating the status of a doctor and his corporation as respondents in discovery. *Id.* In contrast, the denial of the section 2-619 motion in *CitiMortgage* was not a procedural step in the progression leading to the order confirming the foreclosure sale. Third, the *CitiMortgage* court's review of an order denying a section 2-619 motion following the entry of the final order terminating the litigation is contrary to the weight of authority on the issue. See *In re Marriage of Sorokin*, 2017 IL App (2d) 160885, ¶ 22; *In re J.M.*, 245 Ill. App. 3d at 919-20; *Paulson*, 97 Ill. App. 3d at 328.

¶ 22    The defendants' only assignment of error which is properly before this court is their argument that the trial court erred in entering summary judgment in favor of Kimberlee. As to that issue, the defendants contend that Kimberlee's claims based upon the 2009 security deposit are barred under the doctrine of *res judicata*. Although we are not called upon to decide the question of whether Kimberlee's claims are barred by the doctrine of *res judicata*, we do find that a genuine issue of material fact exists on the issue.

¶ 23    "The purpose of summary judgment is not to try a question of fact, but to determine whether a genuine issue of material fact exists." *Illinois State Bar Ass'n Mutual Insurance Co. v. Law Office of Tuzzolino and Terpinas*, 2015 IL 117096, ¶ 14. Summary judgment is proper when the pleadings, depositions, admissions, and affidavits on file show that there is no genuine

issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 20. "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Seymour v. Collins*, 2015 IL 118432, ¶ 42. We review an order granting summary judgment *de novo*. *1010 Lake Shore Ass'n*, 2015 IL 118372, ¶ 20.

¶ 24    Under the doctrine o*f res judicata*, a final judgment on the merits will bar any subsequent actions between the same parties or their privies involving the same cause of action. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). Fo*r res judicata* to apply, three conditions must be met: "(1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Id.* "An adjudication is considered 'on the merits' when it 'determines the parties' respective rights and liabilities based on the facts before the court.' " *Lelis v. Board of Trustees of Cicero Police Pension Fund*, 2013 IL App (1st) 121985, ¶ 31 (quotin*g Lehman v. Continental Health Care, Ltd.*, 240 Ill. App. 3d 795, 802 (1992)). A cause of action, in turn, is "a single group of facts giving the plaintiff a right to seek redress for a wrongful act or omission of the defendant." *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 490 (1993).

¶ 25    In this case, the defendants contend, as they did before the circuit court, that *res judicata* barred Kimberlee's claims. They assert (1) that the circuit court's judgment in favor of CMW on the arbitrator's award is a final judgment on the merits; (2) that Kimberlee's claims are identical to CMW's; and (3) that privity exists between Kimberlee and CMW. In response, Kimberlee argues both that she is not in privity with CMW and that the arbitrator never adjudicated any rights to the 2009 security deposit which she paid.

¶ 26    In considering the scope of the arbitrator's award in this case and the judgment in favor of CMW entered thereon, we are instructed by our supreme court's reasoning in *Cruz v. Northwestern Chrysler Plymouth Sales, Inc.*, 179 Ill. 2d 271 (1997).  As the supreme court explained, an arbitrator's award disposes of all claims for relief because the arbitration system will function "only if defendants can rely on the arbitrator's award as fixing their maximum exposure to liability."  *Id.* at 280.  In this case, CMW's Statement of the Case filed in the arbitration proceeding, stated that it sought "the amount of the security deposit ($13,132[.]50)[ ]***."  Here, as in *Cruz*, we have no reason to speculate as to what claims were adjudicated in arbitration because the arbitrator's award in favor of CMW disposed of "all claims for relief," including CMW's claim for the 2009 security deposit.  See Ill. S. Ct. R. 92(b) (eff. Dec. 5, 2016).  We believe, therefore, that, regardless of what the arbitrator said or failed to say, the award in favor of CMW and the circuit court's judgment thereon resolved CMW's right to relief based upon both the 2009 security deposit and the 2011 supplemental security deposit.

¶ 27    Turning to the second element of *res judicata*, we find that an identity of causes of action exists in this case.  Separate claims are considered the same cause of action for purposes of *res judicata* if they arise from the same transaction, series of transactions, or group of operative facts.  See *River Park, Inc. v. City of Highland Park,* 184 Ill. 2d 290, 311-12, 315 (1998).  This is plainly the situation in the case at bar, where CMW's and Kimberlee's claims for the 2009 security deposit involved precisely the same facts.  Notably, Kimberlee, John and CMW filed a single complaint, relied on the same allegations therein, and sought the same relief.  See *Torcasso*, 157 Ill. 2d at 491 (causes of action are identical when the same facts are essential to both proceedings, as indicated by the record and pleadings).  CMW's and Kimberlee's causes of

action based upon the defendants' failure to return the 2009 security deposit or pay interest thereon are identical.

¶ 28    Kimberlee argues, however, that CMW lacked standing to raise a claim for the 2009 security deposit because she paid it with a personal check.  However, Kimberlee is a stranger to the May 2009 lease; she was neither the named lessee not the guarantor.  As stated earlier, although  Kimberlee's affidavit and cancelled check show that she paid the 2009 security deposit, the lessee was CMW and the lease states that "[l]essee has deposited with [l]essor the security deposit" and that, upon termination of the lease agreement, the security deposit "shall be returned to [l]essee, including interest[ ] ***."   Clearly a factual issue remains as to whether Kimberlee posted the 2009 security deposit on behalf of CMW.  In addition to the factual question of whether Kimberlee posted the 2009 security deposit on behalf of CMW, there also exists the question of  whether Kimberlee was in privity with CMW for *res judicata* purposes.

¶ 29       We begin our analysis of the issue with the distinction between standing and privity. "Standing" refers to whether a litigant "is entitled to have the court decide the merits of a dispute or a particular issue" and "requires some injury in fact to a legally recognized interest." *In re Estate of Wellman*, 174 Ill. 2d 335, 344-45 (1996).  Privity, in turn, exists when parties adequately represent the same legal interests, irrespective of their nominal identities.  *Oshana v. FCL Builders, Inc.*, 2013 IL App (1st) 120851, ¶ 23 (citing *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992)).  Thus, "[a] nonparty may be bound pursuant to privity if his interests are so closely aligned to those of a party that the party is the 'virtual representative' of the nonparty." *City of Chicago v. St. John's United Church of Christ*, 404 Ill. App. 3d 505, 513 (2010).  Because there is no "prevailing definition of 'privity' that the court can apply to all cases[,] *** determining privity requires careful consideration of the

circumstances of each case." *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 403 Ill. App. 3d 179, 190 (2010).

¶ 30    CMW was the lessee under the May 2009 lease and a co-lessee with John under the June 2011 renewal lease.  Before the second amended complaint named CMW as a party-plaintiff, Kimberlee and John sought damages based upon the defendants' failure to return both the 2009 security deposit that was paid by Kimberlee and the 2011 supplemental security deposit paid by CMW or pay interest on either.  In their second amended complaint, Kimberlee, John and CMW sought damages based upon the defendants' failure to return both security deposits or pay interest thereon.  After John and Kimberlee were dismissed as party-plaintiffs, CMW persisted in prosecuting claims based upon both the 2009 security deposit and the 2011 supplemental security deposit, and in its Statement of the Case filed in the arbitration proceeding, stated that it sought "the amount of the security deposit ($13,132[.]50)[ ]***."  In addition, CMW listed Kimberlee and John as witnesses to be called at the arbitration hearing, and throughout all of the proceedings, CMW, John and Kimberlee were represented by the same attorney.  See *Johnson v. Nationwide Business Forms, Inc.*, 103 Ill. App. 3d 631, 635 (1981) (finding privity where the plaintiffs were represented by the same attorneys and their causes of action "contained identical allegations of misconduct"); *Houghton v. Novak*, 9 Ill. App. 3d 699, 701 (1973) (recognizing privity between claimants who were in "a mutual relationship to the same property rights which were the subject matter of the prior litigation").

¶ 31    Viewing the evidentiary material contained in the record before us in its light most favorable to the defendants (see *Williams v. Manchester,* 228 Ill. 2d 404, 417 (2008) (evidentiary material in a summary judgment proceeding must be construed liberally in favor of the opponent of the motion)), we believe that, at minimum, there exists a material issue of fact on the question

of whether Kimberlee was in privity with CMW. As such, the defendants' invocation of the doctrine o*f res judicata* as a bar to Kimberlee's claims based upon the 2009 security deposit should not have been resolved against them in a summary judgment proceeding.

¶ 32    Based upon the foregoing analysis, we reverse the summary judgment entered in favor of Kimberlee and remand this matter back to the circuit court for further proceedings consistent with the opinions expressed herein.

¶ 33    Reversed and remanded.

¶ 34    JUSTICE DELORT, specially concurring:

¶ 35    The defendants moved to dismiss the complaint pursuant to section 2-619 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-619 (West 2014). Their motion asserted that only natural persons, rather than corporations such as Chicago Music Works, Inc., had standing to bring claims under the Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010 *et seq*. (amended Mar. 31, 2004)). The circuit court denied the motion to dismiss, but the defendants nonetheless pleaded an affirmative defense raising the same standing issue. It appears that the defendants did not raise this defense when they responded to the plaintiffs' summary judgment motion. In their appeal, defendants maintain that the circuit court erred when it denied their section 2-619 motion to dismiss, because corporations which are tenants do not have standing to raise claims under the RLTO.

¶ 36    The majority finds that the defendants cannot pursue this claim on appeal because the denial of a section 2-619 motion merges into the ultimate judgment. See *supra* ¶¶ 19-21. The majority relies on several cases which so hold: *In re Marriage of Sorokin*, 2017 IL App (2d) 160885; *In re J. M.*, 245 Ill. App. 3d 909 (1993); and *Paulson v. Smith*, 97 Ill. App. 3d 326

- 13 -

(1981). The majority then distinguishes these cases from a case which no party cited, *CitiMortgage v. Hoeft*, 2015 IL App (1st) 150549.

¶ 37 The *CitiMortgage* court recognized that denials of section 2-619 motions are not normally appealable. See *id.* ¶ 8. And just as in this case, after the defendants' section 2-619 motion was denied, the defendants pleaded an affirmative defense raising the same issue. However, unlike here, the circuit court in *CitiMortgage* specifically struck that affirmative defense, essentially barring the defendants from raising the issue either at trial in opposition to the plaintiff's motion for summary judgment. Accordingly, the *CitiMortgage* court determined it should address the issue on the merits. It applied the rule that an appeal from a final judgment order " 'draws into issue all previous interlocutory orders that produced the final judgment.' " *Id.* (quoting *Knapp v. Bulun*, 392 Ill.App.3d 1018, 1023 (2009)).

¶ 38 The majority here takes issue with that approach. But this court has often squarely addressed appeals from the denial of a section 2-619 motion to dismiss, after a final judgment was entered, and resolved the propriety of the section 2-619 denial on the merits. *See*, *e.g.*, *Whetstone v. Sooter*, 325 Ill. App. 3d 225, 232 (2001); *Rohter v. Passarella*, 246 Ill. App. 3d 860, 870 (1993). Despite the authorities cited by the majority, this court has not always honored the rule enunciated in those cases, and our supreme court has never adopted that rule itself. Accordingly, I must respectfully decline to join the majority's analysis of *CitiMortgage*. I note, however, that even under the majority's analysis, the central holding of *CitiMortgage*, which pertained to whether particular language in a mortgage acceleration notice is defective, is unaffected by today's decision.

¶ 39 Unlike the majority, I would apply the procedural progression rule and address the denial of the section 2-619 motion on the merits. The issue presented is straightforward. The defendants

contend that a corporation which is a tenant cannot bring claims under the RLTO. When a court interprets an ordinance, it must "ascertain and give effect to the drafter's intent." *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL 110505, ¶ 48. "All other rules of statutory construction are subordinate to this cardinal principle." *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). The ordinance's language, given its plain and ordinary meaning, is the best indication of legislative intent. *Palm*, 2013 IL 110505, ¶ 48.

¶ 40    The plain language of the ordinance provides an easy answer to the question defendants raise. Section 5-12-030 (i) of the RLTO defines "tenant" as: "a *person* entitled by written or oral agreement, subtenancy approved by the landlord or by sufferance, to occupy a dwelling unit to the exclusion of others." Chicago Municipal Code § 5-12-030 (i) (amended May. 2, 2010) (emphasis added). "Person", in turn, is defined in the same section as "an individual, *corporation*, government, governmental subdivision or agency, business trust, estate, trust, partnership or association or any other legal or commercial entity." Chicago Municipal Code § 5-12-030 (d) (amended May. 2, 2010) (emphasis added). Therefore, the defendants' claim is without merit.

¶ 41    Notwithstanding our difference in approach on the section 2-619 issue, I otherwise concur with the remainder of majority's opinion and judgment.