2019 IL App (1st) 190801-U

FIFTH DIVISION
Order filed: December 20, 2019

No. 1-19-0801

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KIMBERLEE OVNIK, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 L 5831 |
| | ) | |
| | ) | |
| GALINA PADOLSKEY and VADIM GOSHKO, | ) | Honorable |
| | ) | Patrick J. Sherlock, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Although the parties filed cross-motions for summary judgment, we find that material issues of fact preclude summary judgment for either party. Consequently, we reversed the summary judgment entered in favor of the defendants and affirmed the denial of the summary judgment sought by the plaintiff.

¶ 2    The plaintiff, Kimberlee Ovnik, appeals from an order of the circuit court of Cook County, granting summary judgment in favor of the defendants, Galina Padolskey and Vadim Goshko, on

her claim seeking damages plus penalties, interest, attorney fees, and costs pursuant to the Chicago Residential Landlord and Tenant Ordinance (RLTO) (Chicago Municipal Code § 5-12-010, *et seq.* (amended Mar. 31, 2004)) by reason of the defendants' failure to return a security deposit posted with them in connection with the rental of a townhouse. For the reasons that follow, we reverse the summary judgment entered in favor of the defendants and remand the matter to the circuit court for further proceedings.

¶ 3    The following factual recitation is taken from the pleadings and exhibits of record and from this court's earlier opinion rendered in this case on September 1, 2017 (*Ovnik v. Podolskey*, 2017 IL App (1st) 162987 (hereinafter referred to as "*Ovnik I*")).

¶ 4    On May 5, 2009, the defendants, as lessors, entered into a two-year lease for a townhouse located at 1816 S. Indiana Avenue in Chicago (hereinafter referred to as the property). The named lessee under that lease was Chicago Music Works, Inc., D/B/A Deaf Dog Music (CMW). The lease agreement states that it was "for a private dwelling" and included a copy of the RLOT. John Ovnik, the plaintiff's then husband and CMW's sole shareholder, signed the lease on behalf of CMW and also signed as guarantor. The plaintiff signed the lease as a witness. The lease agreement provided for a $6,375 security deposit and states that the "[l]essee has deposited with [l]essor the security deposit" and that, upon termination of the lease, the security deposit "shall be returned to [l]essee, including interest." The security deposit was posted by a check drawn by the plaintiff on her personal checking account. During the term of the lease, the plaintiff and John Ovnik occupied the property as their residence. A portion of the property was used as an office for CMW.

¶ 5    The lease for the property was renewed for another two-year term beginning June 1, 2011. A renewal lease agreement was executed, which again listed the defendants as the lessors but listed both CMW and John Ovnik as the lessees. That renewal lease agreement required an additional

$6,757.50 in security deposit to be posted with the lessors. CMW posted the additional security deposit, bringing the total deposit posted to $13,132.50.

¶ 6 On May 29, 2013, possession of the property was tendered back to the defendants. The defendants did not return the $13,132.50 security deposit.

¶ 7 On November 14, 2013, the plaintiff and John Ovnik (collectively referred to as the Ovniks) filed the instant action, seeking to recover the $13,132.50 combined security deposit plus penalties, interest, attorney fees, and costs pursuant to sections 5-12-080(f)(1) and 5-12-180 of the RLTO (Chicago Municipal Code § 5-12-080(f)(1) (amended July 28, 2010) and 5-12-180 (amended Nov. 6, 1991)). On April 7, 2014, the defendants filed a combined motion under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)), seeking dismissal under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-15, 2-619 (West 2012)). On June 17, 2014, the circuit court struck the complaint pursuant to section 2-615 of the Code and granted the Ovniks leave to file an amended complaint.

¶ 8 On July 8, 2014, the Ovniks filed their amended complaint against the defendants, again seeking to recover the $13,132.50 combined security deposit plus penalties, interest, attorney fees, and costs under the RLTO. On August 11, 2014, the defendants filed a motion pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2012)) to dismiss that portion of the complaint seeking penalties, interest, attorney fees, and costs. On November 13, 2014, the circuit court denied the motion. The defendants filed a motion to reconsider, which the circuit court denied on February 15, 2015. On that same day, the circuit court referred the matter for mandatory arbitration.

¶ 9    On February 19, 2015, the defendants again moved to dismiss the amended complaint pursuant to section 2-619 of the Code, arguing that the Ovniks lacked standing to bring the action. That motion was amended on March 6, 2015, again asserting lack of standing.

¶ 10    On March 18, 2018, the circuit court granted the Ovniks' motion for leave to file a second amended complaint. A three-count verified second amended complaint was subsequently filed, listing the Ovniks (the plaintiff and John Ovnik) and CMW as the plaintiffs and again seeking to recover the $13,132.50 combined security deposit plus penalties, interest, attorney fees, and costs under the RLTO. The pleading was verified by both the plaintiff, individually, and John Ovnik, individually and as president of CMW. Attached to the second amended complaint as exhibits were both the May 5, 2009 lease for the property and the 2011 renewal lease. On April 20, 2015, the defendants filed a motion to dismiss the second amended complaint pursuant to section 2-619 of the Code, raising the following arguments: (1) the RLTO does not apply to corporate entities such as CMW; (2) the Ovniks were not parties to the original lease; (3) and it was CMW that paid the security deposits. On June 3, 2015, the circuit court granted the defendants' motion as to the Ovniks, finding that they had not paid the security deposits and, therefore, lacked standing to bring suit. However, the circuit court denied the motion to dismiss as to CMW.

¶ 11    On June 10, 2015, the defendants filed their answer to the second amended complaint, along with their affirmative defenses and a four-count counterclaim seeking recovery against the Ovniks and CMW for breach of contract, damage to property pursuant to section 5-12-040 of the RLTO (Chicago Municipal Code § 5-12-040 (amended June 5, 2013), common law damage to property, and failure to pay rent pursuant to section 5-12-130 of the RLTO (Chicago Municipal Code § 5-12-130 (amended Nov. 6, 1991).

¶ 12    On July 2, 2015, the Ovniks filed a motion to reconsider the June 3, 2015 order dismissing them as plaintiffs. They argued that the plaintiff had paid the $6,375 security deposit posted in 2009 with a check drawn on her personal checking account. The motion was supported by the plaintiff's affidavit and a copy of her check.

¶ 13    Before the circuit court ruled on the Ovniks' motion to reconsider the order dismissing them as plaintiffs, the matter proceeded to arbitration on CMW's claims against the defendants. CMW sought the entire combined security deposit of $13,132.50, plus penalties, interest, and attorney fees. Following the arbitration hearing, the arbitrator awarded CMW $21,187.86. In addition, the arbitrator found in favor of the Ovniks and CMW on the defendants' counterclaims. Neither CMW nor the defendants moved to reject the award.

¶ 14    On September 28, 2015, the circuit court ruled on the Ovniks' motion for reconsideration, vacating the dismissal of the plaintiff, but not the dismissal of John Ovnik.

¶ 15    On September 29, 2015, the circuit court entered a $21,187.86 judgment on the arbitrator's award in favor of CMW and against the defendants, jointly and severally. The circuit court also entered judgment in favor of the Ovniks and CMW and against the defendants on the defendants' counterclaims. The circuit court found that, as to CMW and John Ovnik, the order "is a final order and there is no just reason for delaying enforcement, appeal or both."

¶ 16    On October 13, 2015, the defendants filed a section 2-619 motion to dismiss the plaintiff's claims, arguing that the claims are barred by the doctrines of *res judicata* and collateral estoppel. The circuit court denied the motion, finding that "[t]he amount of [the arbitrator's] award shows he did not *** enter" an award as to the 2009 security deposit posted by the plaintiff.

¶ 17    On April 28, 2016, the plaintiff filed a motion for summary judgment on her individual claims predicated on the defendants' failure to return the $6,375 security deposit. In response, the

defendants argued that the plaintiff was in privity with CMW, and as a consequence, her claims based upon the 2009 security deposit are barred under the doctrine of *res judicata*.

¶ 18     On July 6, 2016, the circuit court granted the plaintiff's motion for summary judgment and entered judgment in her favor and against the defendants in the sum of $19,125 for the 2009 security deposit and penalties under the RLTO. On October 5, 2016, the circuit court awarded the plaintiff an additional $25,200 for attorney fees, costs, and interest. The circuit court denied the defendants' post-judgment motion on November 3, 2016, and the defendants appealed (*Ovnik I*).

¶ 19     In urging reversal of the summary judgment entered in favor of the plaintiff, the defendants argued that her claims based upon their failure to return the $6,375 security deposit posted in 2009 are barred under the doctrine of *res judicata. Ovnik*, 2017 IL App (1st) 162987, ¶ 22. In our opinion in *Ovnik I*, we held that the doctrine of *res judicata* will bar any subsequent litigation between the same parties or their privies involving the same cause of action if the following three conditions are met: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) identity of causes of action exists; and (3) the parties or their privies are identical in both actions. *Id.* ¶ 24. We found the first two conditions satisfied. The September 29, 2015 judgment entered by the circuit court on the arbitrator's award in favor of CMW and against the defendants was a final judgment on the merits. As to the scope of that judgment, we concluded that it disposed of all CMW's claims against the defendants, including its claims based upon the defendants' failure to return the $6,375 security deposit posted in 2009. *Id.* ¶ 26. As to the second condition for the application of the doctrine of *res judicata,* we found that an identity of causes of action exists between CMW's and the plaintiff's claims based upon the defendants' failure to return the $6,375 security deposit posted in 2009. Our conclusion in this regard was based upon the fact that CMW's and the plaintiff's claims arise from the same transaction and group of operative facts. *Id.*

¶ 27. However, as to the third condition, we found that a factual question existed on the issue of whether the plaintiff was in privity with CMW. *Id.* ¶ 28. In addition, based on the fact that CMW was the lessee in the 2009 lease and the agreement provided that the "[l]essee has deposited with [l]essor the security deposit," we found that a factual issue remained as to whether the plaintiff posted the 2009 security deposit on behalf of CMW. *Id.* We concluded, therefore, that the defendants' invocation of the doctrine of *res judicata* as a bar to the plaintiff's claims based upon their failure to return the $6,375 security deposit posted in 2009 should not have been resolved against them in a summary judgment proceeding. *Id.* ¶ 31. And consequently, we reversed the summary judgment in favor of the plaintiff and remanded the matter back to the circuit court for further proceedings. *Id.* ¶ 32.

¶ 20 On remand, the defendants filed a motion for summary judgment supported, *inter alia,* by the May 5, 2009 lease for the property, plaintiff's deposition testimony, and John Ovnik's affidavit. The defendants again argued that the plaintiff's claims based upon their failure to return the $6,375 security deposit posted in 2009 are barred under the doctrine of *res judicata.* The plaintiff filed a pleading titled "Plaintiff's Response In Opposition To Defendants' Motion For Summary Judgment" supported by, among other documents, the May 5, 2009 lease for the property, her own deposition, and her own affidavit. Although the pleading is labeled as a response to the defendants' motion for summary judgment, a reading of the document reveals that it also requests that summary judgment be entered in favor of the plaintiff and against the defendants. Specifically, the plaintiff requested that summary judgment be entered in her favor and against the defendants in the sum of $19,145.56 plus attorney fees, costs, and interest.

¶ 21 In its written order of March 19, 2019, the circuit court found that, following this court's decision in *Ovnik I*, the only remaining issue as to whether the doctrine of *res judicata* acts as a

bar to the claims asserted by the plaintiff is the question of whether she and CMW are in privity. The circuit court concluded that there is no genuine issue of fact on the question as their interests were identical; and consequently, granted the defendants' motion for summary judgment. Although the circuit court did not specifically rule on the plaintiff's motion for summary judgment, by granting summary judgment in favor of the defendants, the court implicitly denied the plaintiff's motion. This appeal followed.

¶ 22    On appeal from an order granting summary judgment, our review is *de novo*. *1010 Lake Shore Ass'n v. Deutsche Bank National Trust Co.*, 215 IL 118372, ¶ 20. In reviewing a summary judgment, we examine all of the pleadings and evidentiary material on file at the time of the entry of the order under review, strictly construing the evidentiary material submitted in support of the motion while liberally construing all evidentiary material submitted in opposition. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008).

¶ 23    Summary judgment is appropriate if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/21005(c) (West 2014)); *1010 Lake Shore Ass'n*, 215 IL 118372, ¶ 20. When, as in this case, the parties file cross-motions for summary judgment, they concede that only a question of law is involved and invite the court to decide the issue based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. However, the court is not obligated to enter summary judgment for either party if material issues of fact precluding judgment for either movant exist. *Id.*

¶ 24    In urging reversal of the summary judgment entered in favor of the defendants, the plaintiff argues the circuit court erred in finding that the evidentiary material of record established that her claims against the defendants are barred under the doctrine of *res judicata*. She contends that the

evidence of record established that she was not in privity with CMW for *res judicata* purposes as they did not share a legal interest in the 2009 security deposit. According to the plaintiff, CMW had no interest in the deposit. The plaintiff not only requests that we reverse the summary judgment in favor of the defendant, she also requests that we remand this case to the circuit court with instructions to enter summary judgment in her favor.

¶ 25    As noted above, we held in *Ovnik I* that *res judicata* will bar any subsequent litigation between the same parties or their privies involving the same cause of action if the following three conditions are met: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) identity of causes of action exists; and (3) the parties or their privies are identical in both actions. *Ovnik*, 2017 IL App (1st) 162987, ¶ 24. The plaintiff has not argued that either of the first to conditions are not met in this case, namely that the September 29, 2015 judgment entered in favor of CMW was a final judgment on the merits and that an identity of causes of action exists between CMW's and the plaintiff's claims based upon the defendants failure to return the 2009 security deposit. The question in this appeal is whether there is a genuine issue of fact on the question of whether the plaintiff and CMW are in privity for *res judicata* purposes.

¶ 26    There is no precise definition of "privity" that can be applied in all cases; that determination is dependent upon the circumstances of each case. *Purmal v. Tobert N. Wadington and Associates*, 354 Ill. App. 3d 715, 722 (2004). "Privity expresses 'the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action as if they were parties.' " *Id.* at 722-23 (quoting Restatement of Judgments § 83, Comment a, at 389 (1942)). Privity exists when the parties adequately represent the same interests, or when they share

a mutual or successive relationship in property rights that were the subject of an earlier action. *City of Chicago v. St. John's United Church of Christ.*, 404 Ill. App. 3d 505, 513 (2010).

¶ 27    The plaintiff asserts that she is not in privity with CMW as to the right to recover based upon the defendants' failure to return the 2009 security, as it was she, and not CMW, who possessed property rights in the 2009 security deposit. She contends that the RLTO, and not the 2009 lease agreement, determined the legal rights in the 2009 security deposit. In support of her argument in this regard, the plaintiff cites to a phrase in section 5-12-080(a)(1) of the RLTO stating that "a security deposit and interest thereon shall continue to be the property of the tenant making such deposit." (Chicago Municipal Code § 5-12-080(a)(1) (amended July 28, 2010)).

¶ 28    From the evidentiary material of record, it is undisputed that the source of the funds used to pay the $6,375 security deposit posted in 2009 was the plaintiff's personal checking account. That does not, however, establish that only the plaintiff possessed property rights in the deposit. The 2009 lease states specifically that the "[l]essee has deposited with [l]essor the security deposit" and that, upon termination of the lease, the security deposit "shall be returned to [l]essee, including interest." The only lessee named in the 2009 lease is CMW. The plaintiff is a stranger to the agreement. Further, we find that the plaintiff's reliance upon section 5-12-080(a)(1) of the RLTO in support of her argument that only she possessed property rights in the deposit is misplaced.

¶ 29    Section 5-12-080(a)(1) of the RLTO provides that:

> "A landlord shall hold all security deposits received by him in a federally
> insured interest-bearing account in a bank, savings and loan association or other
> financial institution located in the State of Illinois.  The security deposit and interest
> due shall continue to be the property of the tenant making such deposit, shall not
> be comingled with the assets of the landlord, and shall not be subject to the claims

of any creditor of the landlord or of the landlord's successor in interest, including a foreclosing mortgagee or trustee in bankruptcy." Chicago Municipal Code § 5-12-080(a)(1) (amended July 28, 2010).

Contrary to the plaintiff's assertion that "[t]he RLTO makes clear that the security deposit remains the property of the tenant that *paid* it "(emphasis added), the ordinance provides that the deposit "shall continue to be the property of the tenant *making* such deposit." (Emphasis added.) *Id.*

¶ 30    The second amended complaint, which was verified by the plaintiff, states, in relevant part, that "CMW entered into a written lease agreement with the [defendants as] landlord." That complaint goes on to state: "In connection with the 2009 lease, the Plaintiffs [plural] gave Landlord a security deposit in the amount of $6,375." As noted earlier, the verified second amended complaint identified the "plaintiffs" as CMW, John Ovnik, and Kimberlee Ovnik (the plaintiff herein). The factual allegations verified by the plaintiff in the second amended complaint are judicial admissions. *Crittenden v. Cook County Commission on Human Rights*, 212 IL App (1st) 112437, ¶ 45; *Knauerhaze v. Nelson*, 361 Ill. App. 3d 538, 558 (2005). Consequently, the plaintiff cannot create a genuine issue of fact and thereby defeat a motion for summary judgment by introducing counter-evidentiary material that contradicts her own judicial admissions. *Crittenden*, 2012 IL App (1st) 112437, ¶ 45. The evidentiary material may well establish that the 2009 security deposit was paid from funds drawn on the plaintiff's checking account, but she has judicially admitted that it was she, John Ovnik, and CMW that gave the security deposit to the defendants; or stated otherwise, they collectively made the deposit.

¶ 31    In further support of her argument that only she, and not CMW, possessed property rights in the 2009 security deposit, the plaintiff also relies upon section 5-12-080(b) of the RLTO (Chicago Municipal Code § 5-12-080(b)(1) (amended July 28, 2010)), which provides that "any

- 11 -

landlord who receives a security deposit from a tenant or prospective tenant shall give said tenant or prospective tenant at the time of receiving such security deposit a receipt indicating the amount of such security deposit." Chicago Municipal Code § 5-12-080(b)(1) (amended July 28, 2010). She concludes that, since the defendants failed to provide any evidence that they gave CMW a receipt for the 2009 deposit, her cancelled check "proves that she, and not CMW paid the 2009 Security Deposit." We note that there is also no evidence in the record that the defendants gave the plaintiff a receipt for the deposit. Nevertheless, the plaintiff's canceled check proves only that the deposit was made by means of a check drawn on her personal checking account; it does not establish on whose behalf the deposit was made. And again, the plaintiff's judicial admission contained in the second amended complaint states that it was she, John Ovnik, and CMW that gave the defendants the $6,375 security deposit.

¶ 32    The plaintiff asserts that "[t]he only way that CMW and [she] *** share an interest in the 2009 Security Deposit is if both contributed funds to the 2009 Security Deposit." The plaintiff cites no support for the proposition. The fact that the plaintiff provided the funds for the deposit does not establish that CMW shared no interest in the deposit in light of the plaintiff's admission that she, CMW, and John Ovnik gave the deposit to the defendants.

¶ 33    The plaintiff also argues that, because the 2009 deposit was paid by her funds solely, CMW lacked standing to recover the 2009 security deposit; and, consequently, no privity exists between her and CMW. Her argument in this regard appears to be based, again, on her conclusion that CMW had no property interest in the deposit. Contrary to the plaintiff's assertion, standing is not jurisdictional. Lack of standing is an affirmative defense to an action which if not raised is forfeited. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53 (2010). CMW's lack of standing was never challenged by the defendants. Nor did the plaintiff interpose any standing

objection when the circuit court entered its September 29, 2015 judgment in favor of CMW. The issue in this case is not whether CMW had standing to pursue a claim based upon the defendants' failure to return the 2009 security deposit. The issue is whether the plaintiff and CMW shared a common property interest in the deposit.

¶ 34    Next, the plaintiff argues that the law-of-the-case doctrine established that CMW had no right to recover the 2009 security deposit. In support of the argument, the plaintiff relies upon the findings of the circuit court in its orders of June 3, 2015, and December 14, 2015. The plaintiff asserts that, in its June 3, 2015 order, "[t]he trial court ruled that '[T]he right to return of the deposit, and interest thereon *** belongs to' the tenant that paid the security deposit, and the co-tenants have no standing to sue for return of the security deposit." According to the plaintiff, the trial court "reaffirmed" its holding in this regard in its order of December 14, 2015. We assume that the plaintiff's argument that the circuit court "reaffirmed" its ruling of June 3, 2015, is based on the court's denial of the defendant's motion to reconsider the order of September 28, 2015, which vacated an earlier order dismissing the plaintiff. The plaintiff concludes that, based upon these orders, the law-of-the-case doctrine limited CMW's standing to a claim seeking recovery based only on the defendants' failure to return the additional security that it posted in 2011; and as a consequence, she shared no identity of interest with CMW as to the 2009 security deposit. We believe that the plaintiff's argument in this regard is the product of a misunderstanding of the applicability of the law-of-the-case doctrine to orders of a trial court.

¶ 35    The law-of-the-case doctrine limits relitigation of a previously decided issue in the same case. *Rommel v. Illinois State Toll Highway Authority*, 2013 IL App (2d) 120273, ¶ 15. It settles, for all subsequent stages of a suit, the particular views of law announced by the court in a prior order or decision. The rule is based upon the sound policy that, where an issue is once litigated

and decided, the issue is settled for all subsequent stages of the suit. *McDonalds Corp.* v. *Vittorio Ricci Chicago, Inc.*, 125 Ill. App. 3d 1083, 1086-87 (1984). The law-of-the-case doctrine is generally applied to the findings and holdings of a reviewing court to subsequent proceedings on remand. However, an order of a trial court may become the law-of-the-case, settling an issue for all subsequent stages of the litigation, but only when the order is both final and appealable and no appeal is perfected. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 368 Ill. App. 3d 734, 742 (3006); *Heller Financial, Inc. v. Johns-Byrne Co.*, 264 Ill. App. 3d 681, 694 (1994); *McDonalds Corp.* v. *Vittorio Ricci Chicago, Inc.*, 125 Ill. App. 3d at 1086-87. The order of the trial court entered on June 3, 2015, upon which the plaintiff's law-of-the-case argument is based, was a final order dismissing the claims of the plaintiff and John Ovnik, but it was not appealable due to the absence of the findings required by Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010). The December 14, 2015 order is neither final nor appealable. An order is considered final "if it determines the litigation on the merits or some definite part thereof." *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1998). The circuit court's order of June 3, 2015 did not resolve this case, or any part thereof.

¶ 36    For her last argument, the plaintiff contends that she and CMW did not share a relationship upon which a finding of privity could be based. Her argument in this regard is, once more, based upon the assertion that, by virtue of the fact that the funds used to pay the 2009 security deposit were drawn from her personal account, CMW had no interest in the 2009 deposit; and therefore, she and CMW did not share a relationship as to the deposit.

¶ 37    Contrary to the plaintiff's arguments, we believe that there is a genuine issue of fact on the question of whether CMW had a property interest in the 2009 security deposit. The  May 5, 2009 lease for the property named CMW as the lessee and stated that the "[l]essee has deposited with

[l]essor the security deposit" and that, upon termination of the lease, the security deposit "shall be returned to [l]essee, including interest." The plaintiff is not named as a lessee in the 2009 lease and has judicially admitted that the $6,375 security deposit was given to the defendants by not only herself, but also by CMW and John Ovnik. Nevertheless, we are still faced with the issue of whether a genuine question of fact exists on whether the plaintiff is in privity with the defendants as to the 2009 security deposit for *res judicata* purposes.

¶ 38    The three general categories of relationships between parties that may establish privity are as follows: (1) relationships that are explicitly representative; (2) substantive legal relationships; and (3) successors in interest to property. Restatement (Second) of Judgments § 75, cmt. a at 210 (1982); see also Restatement (Second) of Judgments §§ 41-43, 54-61 (1982); *Direct Auto Insurance Company v. Bahena*, 2019 IL App (1st) 172918, ¶ 64; *Oshana v. FCL Builders, Inc.*, 2013 IL App (1st) 120851, ¶ 28. There is no evidence of record in this case that the relationship of the plaintiff and CMW as to the 2009 security deposit is explicitly representative. Nor is there any evidence that they are successors in interest. There is a question of fact on whether they shared a substantive legal relationship as co-owners of the 2009 security deposit.

¶ 39    Assuming for the sake of further analysis that the plaintiff and CMW were co-owners of the 2009 security deposit, we do not believe that fact necessarily makes them representatives of each other for *res judicata* purposes. Privity is said to exist when parties adequately represent the same legal interest. *Direct Auto Insurance Company*, 2019 IL App (1st) 172918, ¶ 62; *Oshana*, 2013 IL App (1st) 120851 ¶ 23. The issue under this requirement is whether the plaintiff's interest in the 2009 security deposit was adequately represented by CMW. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296-97 (1992). On this issue, we find a genuine question of fact.

¶ 40    It is true that the plaintiff and CMW were represented by the same attorney throughout this litigation, including at the arbitration hearing which resulted in the award in favor of CMW that was the basis for the September 29, 2015 judgment in CMW's favor. However, the plaintiff was only a party to the arbitration proceeding as a counter-defendant. The only claim which was pending against the defendants at the time of the arbitration hearing was CMW's claim. The plaintiff had no claim based on the defendants' failure to return the security deposit pending at the time of the arbitration as the result of June 3, 2015 order which dismissed both her and John Ovnik as plaintiffs. The only claim that CMW prosecuted at the arbitration was its claim based on the defendants' failure to return the security deposit which, as we held in *Ovnik I*, included the 2009 security deposit. See *Ovnik*, 2017 IL App (1st) 162987, ¶ 26. We believe, therefore, that there is a genuine issue of fact on the question of whether CMW adequately represented any interest that the plaintiff may have, if any, in the 2009 security deposit. In the absence of adequate representation, there can be no privity. *People ex rel. Burris*, 151 Ill. 2d at 296-97. It is for this reason that we reverse the summary judgment entered in favor of the defendants.

¶ 41    The foregoing analysis also leads us to conclude that there is a genuine issue of fact on the question of whether the plaintiff had any interest at all in the 2009 security deposit. As noted, the 2009 lease states that the "[l]essee [CMW] has deposited with [l]essor the security deposit." Although the $6,375 security deposit was paid with a check drawn on the plaintiff's personal account, John Ovnik's affidavit states that it was he that gave the security deposit to the defendants, and he was the CMW's sole shareholder. As was the case when we decided *Ovnik I*, there is a question of fact on the issue of whether the plaintiff paid the 2009 security deposit on behalf of CMW. See *Ovnik,* 2017 IL App (1st) 162987, ¶ 28. Consequently, the plaintiff is not entitled to summary judgment.

¶ 42    In sum, we reverse the summary judgment entered in favor of the defendants and affirm the circuit court's implicit denial of a summary judgment in favor of the plaintiff.

¶ 43    Affirmed in part; reversed in part; and remanded.